19th Jan. 1811.
Present, Grimke, Watif.s, Bay, Brevard, Smith, and Nott, Justices.
Brevard, J.,
delivered the opinion of those judges present, who heard the argument, as follows, after stating the case. AH the different grounds taken for the plaintiffs have been elaborately and ably argued by the counsel on both sides, and a great many points have been made and discussed. In the view, however, which I shall present of the case, in the opinion I am now to deliver, two questions only will be considered, namely : 1. Whether the representation in the policy, “ that the goods belonged to the plaintiffs, American citizens, resident in Charleston,” is t.o be considered as merely descriptive of the property insured, or amounts to a warranty of neutrality 1 2. Whether, admitting the representation in the policy to be a warranty of neutrality, the decree of condemnation in the Admiralty Court at Jamaica, under all the circumstances of the case, disclosed in evidence on the trial, is to be regarded as conclusive to falsify that warranty ?
1. An approved writer on the law ofinsurance, distinguishing between a representation and a warranty, describes a warranty to be a condition precedent, and part of the written policy ; and a representation to be a matter collateral, making no part of the policy. A ■warranty is to be strictly and literally complied with ; a representation must be substantially complied with, or the policy may be avoided on the ground of fraud. A sound application of this definition to the question under consideration, must be conclusive, that the representation in the body of the policy, stating the goods in *455 question to belong to American citizens, resident in Charleston, amounts to an ¿express warranty, that the same were neutral pro-perry at the tints' of the contract. This doctrine is clearly laid down by several Erfglish judges, as the Well established Law Merchant, in delivering their opinions in the case of Lothian against Henderson, 3 Bos. and Pul. 499. In that case the ship Catharine was tepresented in the policy as an American vessel; and this representation was considered as an averment, winch, according to the uniform current of authorities, was held equal to an express warranty.
2. Construing the policy, then, as containing an express warranty, that the coffee in question %yas neutral property, I proceed to consider the second question proposed, viz., whether the decree, or sentence, of the British Vice Admiralty Court at Kingston, in Jamaica, condemning the coffee “ as belonging to enemies of Great Britain, or otherwise,” must be regarded as conclusive evidence to falsify that warranty 1 It would be extremely laborious,-as well as tedious, to state the various arguments, and examine the numerous authorities and cases on this much contested question, concerning the conclusiveness of foreign sentences,- or judgments. It will be sufficient to say, that they have been attentively considered; and notwithstanding the strong bias of my mind, against the arbitrary and unjust decisions of foreign tribunals in various instances, and especially on late occasions, greatly injurious to the commercial interests of this country, yet 1 am clearly of opinion, that the general rule of maritime law, as it is established in England, and as it is, I believe, also established in most of the United States, is, with us, to be considered of unquestionable nutho. rity. It is my duty, in my judicial character, to declare what I believe the law is, and not what I think it ought to be. The general rule is this : That the sentence, or judgment, of a foreign judicial tribunal of competent jurisdiction, must be regarded in our courts as conclusive upon the subject adjudged, or points decided by it. It may be doubled whether this rule was, as it has been supposed, introduced into England, with the extension of commerce, long before the determination oí the case of Hughes v. Cornelius. It was, however,, recognized in the case of Beruardi v. Motteux, as a rule previously established ; and it is consistent with the doctrine that obtains in relation to domestic judgments, and the sentences of the spiritual and' maritime courts. What has been said of the comity which prevails amongst civilized States, does not strike me as an argument of much weight. I do not find that this reciprocal respect is general amongst nations. It has never prevailed in France. The policy *456 *'ie ru^e f^oes not appear to be so much a matter of national iin« portance, as of municipal regal,it ion. The questions Unit havet arisen on the subject of the conclusive),css of foreign sentences, in this country, i>s well ns in England, do not appear tojiie to affect the general rale as I have laid it down, exiept in one or two instances which have occurred in the courts of some of oar sister States. None of the points which have been so much contested in the English and American courts, and which nitty yet be considered as-doubtful, are involved in the present case. There are many excep-. tions to the general lule; and it may be, that several other exceptions, besides those which are acknowledged to be so, may be hereafter established. For example: The ge tend rule will not apply,, if the definite sentence he pronounced by an incompetent court. Other nations, whose.subjects may be interested, are not bound to acquiesce in the sentence, or pay any respect to it, unless the court had competent authority. On this ground, the decrees of foreign courts have been questioned; and the competency of the courts which pronounced the same has been examined into. This is sometimes a very difficult question to determine ; and it may still be questionable whether the jurisdiction of a foreign tribunal can be decided on in our courts; and ulietherit lias exercised its jurisdiction according to the law of nations? Whether its sovereign could, consistently with the law of nations, confer the power exercised? These are questions not involved in the present case. The general rule v' ill not apply, rf the sentence be general, and does not express the ground of condemnation ; or if the special grounds of condemnation set forth in the sentence do not, necessarily negative the warranty of neutrality. In such case, the court, where the sentence is produced in order to satisfy the warranty, may receive evidence to prove the truth of it. tío also, if the sentence be ambiguous, arid there is reason to suppose that it proceeded on a different ground from that of enemy’s property. It has been laid down by some judges in England, that if the sentence of con deni nation states a ground which will not bear it out, if true, yet if it clearly appear that the condemnation is as enemy’s property, the sentence is to he received as conclusive evidence against the warranty of neutraliiy j and that wherever it can be collected from the sentence that the point of neutrality has been decided, the decision must he considered as con. elusive, no matter by what deductions the conclusion is made. This doctrine may, perhaps, be questioned. The present case, however,, cannot be affected by it. The general rule will not apply, if it ap. pears from the facts stated, and also from the conclusion drawn *457 from them, that the condemnation was not for any violation of the law of nations, but for a non-compliance with an arbitrary regulation of the nation whose tribunal has pronounced the sentence. In such case, the sentence ought to be regarded as void. It is sometimes a perplexed question, whether the condemnation has been on grounds consistent with the law of nations, or on grounds of some contravention of the arbitrary regulations of the country where the sentence is pronounced, and in which- the terms of the sentence do not necessarily contradict the warranty of neutrality. Where this question occurs, the reasons given fpr the sentence may be examined, in order to ascertain the certainty of the sentence. And perhaps it ought to be examined into, if the reasons assigned as the grounds of the sentence or decree, do not warrant it upon principles of public law. The present case, however, does not depend on any objection of this sort. The reasons assigned as the grounds of condemnation do not appear to be inconsistent with the law of nations, or to create any doubt on that point. It manifestly appears by the decree of the 'court, that the coffee in question was condemned as enemy’s property. The jurisdiction of the court has not been questioned.
But it has been contended that the decree is ambiguous and uncertain ; that the words therein, “ or otherwise,” afford grounds for supposing that the sentence proceeded on some other ground than that of enemy’s property. My opinion on this point is, that those words, whatever may be their import, and for whatsoever purpose they may have been introduced, they cannot be so construed as to contradict, or in any degree invalidate the force and effect of the preceding words, “condemned as belonging to the enemies of Great Britain.”
The words “ or otherwise,” seem to be common in policies; yet no exception like the present has ever before been taken, that I can find. They seem to have been inserted for a similar purpose to that of the prbtesiation in pleading, to avoid any implied admission that on any other ground the property insured was not liable to seizure and confiscation. ' In the quaint and pithy dialect of Sir Edward Coke, those words may be considered as “ an exclusion of a conclusion that althogh the coffee in question might not be liablte-to • condemnation as enemy’s property, yet it should not thence be con-eluded that it was not liable on some other ground. In any other sense, the words are of very doubtful signification, and may be properly rejected as superfluous.
We are all of opinion that the District Court before which *458 the trial took place was not competent, under thé circumstances of the case, to review the proceedings of the Vice Admi-rally Court, in order to consider the propriety of its judgment. Jt does not appear to me that the rule which is laid down, establishing the conclusiveness of foreign sentences, subject to the exceptions which have been noticed, although greatly complained of by some, can be considered as unjust and impolitic. It may, indeed, bear hard, in particular instances, on some who may be ignorant of it in all its extent, or who may calculate on better treatment of neutrals by foreign belligerents than has of late been experienced. But it should be considered that the insured may, if they choose, and insurers often do, guard themselves against the effects of unjust and injurious foreign sentences, by express stipulations in the policy. The insured must be presumed to be as well acquainted with the consequences resulting from the judgments and decrees of foreign tribunals, as the insurer ; and it is to be presumed that he enters into these contracts with his eyes open to all the risks to which the property may be exposed from the unwarrantable decisions of belligerent prize courts, or other foreign tribunals.
The presiding judge on the trial, was of opinion that the decree was uncertain by reason of the subjoined words, ‘‘or otherwise ;’T and for this, and other reasons, permitted the defendant to adduce evidence to show that the coffee in question was neutral property, and not liable to condemnation as property of the enemies of Great Britain. As we are all of opinion that the decree is sufficiently certain, and that there cannot be any doubt, from the words of it, on what ground the court decided ; and as it is clear that the property was condemned as enemy’s property, whether rightly or not, we cannot undertake to say, we are bound to declare, that the decree ought to have been deemed conclusive to falsify the warranty of neutrality in the contract in question. Of course, it is our opinion that the evidence, which was admitted to prove the truth of the warranty in contradiction to the decree, was improperly admitted.
But even if it should be conceded that the decree was properly open for examination, yet it has not been shown satisfactorily, I think, that the sentence was unjust. The propriety and justice of thefeentence ought not to be tested by other evidence than that which was produced in the court which pronounced it. Now, if every circumstance be fairly and candidly weighed and considered, it will, at least, appear doubtful, whether the Admiralty Court at Jamaica, had not good grounds for giving the judgment it did, from the evidence before it. Without regarding the truth of the fact al- *459 ieged, that Kliene was a Westphalian by birth, and domiciliated at St. Domingo, it is certain this appeared to be the fact on the trial before the Admiralty Court. In truth, Kliene’s domicil was at St. Domingo,''although he might be a naturalized citizen of the United States; and there can be no doubt but that, with respect to belligerent nations, the place of domicil always determines, in relation to trade, whether enemy, or neutral. The captain of the brig de. dared, that the property on board belonged to Kliene. The invoice, showing that the coffee was shipped as the property of the plaintiffs, was not on board. It was not transmitted by the brig, and therefore probably was not in evidence. If it was produced, it was not entitled, under the circumstances of the case, to any weight. The letter from Kliene to the plaintiff stands on the same ground.
Note. See 1 Binney 293, &c. Calhoun, &c., v. The Insurance Company of Pennsylvania. Cooper’s Opinion, Pennsylvania.
The bill of lading did not mention the real owner of the property. It was therefore natural to suppose it was shipped on ac. count of Kliene, who was the shipper. Though it may not be necessary, in peaceful times, and in ordinary cases, to specify in bills of lading, the real owners of the property mentioned in them, or on whose account shipped ; yet in time of war, and on an occasion like that which occurred in this case, it seems reasonable to believe there is a necessity for it. The omission afforded a reasonable ground for presuming that the shipper was owner ; and it has not appeared that any evidence, was adduced to rebut that presumption,
A new trial was ordered.